UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

KEVIN DALE BEST,

                                Petitioner,              Case No. C25-1689-JLR-MLP

        v.

                                                         REPORT AND RECOMMENDATION

KARIN ARNOLD,

                                Respondent.

## I.    INTRODUCTION

Petitioner Kevin Best is a Washington prisoner who is currently confined at the Stafford Creek Corrections Center in Aberdeen, Washington. He seeks relief under 28 U.S.C. § 2254 from his 2021 Snohomish County Superior Court judgment and sentence. (*See* dkt. ## 4, 6.) Respondent filed an answer responding to Petitioner's federal habeas claims and submitted relevant portions of the state court record. (Dkt. ## 14-15.) Petitioner filed a response to Respondent's answer and Respondent, at the Court's direction, supplemented the record with relevant portions of the trial transcript which had not been submitted as part of the original record.[1] (Dkt. ## 16-18.) This Court, having carefully reviewed Petitioner's petition for writ of

---

[1] Following Respondents' submission of the supplemental record, Petitioner filed objections in which he identifies documents that were omitted from the record submitted by Respondents which he believes are

REPORT AND RECOMMENDATION - 1

habeas corpus, all briefing of the parties, and the state court record, concludes that the petition should be denied and this action should be dismissed with prejudice.

## II.    BACKGROUND

### A.    Factual Background

The Washington Court of Appeals summarized the facts underlying Petitioner's crimes as follows:[2]

> Respondent Kevin Best came to the attention of law enforcement officers in December 2015 when he responded to an ad they had posted on an online platform for classified advertising. The ad, posted by an individual named "Kristi,"[3] sought a "daddy to take care of her girls." Kristi was in reality a police officer working in a sting operation. She posed as the mother of two girls, ages 11 and 8, and a son age 13. Best and Kristi exchanged sexually explicit e-mails, text messages and phone calls over a period of two months. Best repeatedly expressed a desire to have sexual contact with each of Kristi's children. He described the anticipated sexual activity in graphic detail. He also described having sexual relations with his own two daughters. In a phone conversation with an agent who was pretending to be "Lisa," Kristi's 11-year-old daughter, Best talked about having sexual intercourse with her and said, "Don't worry, I'll show some attention to your younger sister too." After this conversation, Best sent Kristi a video of himself masturbating and ejaculating.
>
> Kristi and Best discussed ground rules for sexual activity involving the children: Best wanted no "aggression" to be used with his daughters, and Kristi said her rules were "no pain, no anal, condoms." They eventually arranged that Best, without his daughters, would come to Kristi's home in Everett on February 20, 2016, a Saturday. The plan was that he would spend the weekend. Best asked if Kristi allowed her girls to have drinks for play nights. Kristi responded no, but she

---

relevant to his claims. (Dkt. # 19.) He also identifies one document that was included in the record which he believes is irrelevant. (*See id.*) Petitioner asks that the Court enter an order directing an additional supplement to the record. (*Id.*) The Court, having reviewed Petitioner's objections, and the entirety of the state court record, deems additional supplementation unnecessary and therefore denies the objections.

[2] This recitation of facts comes from an opinion issued by the Washington Court of Appeals prior to Petitioner's trial. Petitioner successfully moved pretrial for dismissal of the charges on the grounds that the state had not presented evidence of a "substantial step." (*See* dkt. # 15-2.) The state appealed the trial court's decision, and the Court of Appeals reversed and remanded the case for trial. (*See id.*)

[3] The trial transcript makes clear that the name used by law enforcement was "Kristl" not "Kristi." (*See* dkt. # 18-4, Verbatim Transcript of Proceedings (VTP), Vol. 4 at 835:11-12.) However, the Court of Appeals' recitation of the facts is otherwise consistent with the evidence adduced at trial.

REPORT AND RECOMMENDATION - 2

said gifts would help to "soften them up." Best talked about taking the children shopping when he came over.

On the arranged date, Best drove to Kristi's home with his dog. On the way, at Kristi's request, he stopped to buy an iced coffee for Kristi and three chocolate milks for the children. When he was almost there, he messaged Kristi to ask if Lisa would meet him at the door. Kristi responded that Lisa was sleeping, and she suggested that Best could wake her up and then "you guys can get it together if that works." Best replied, "Cool."

Best was arrested when he arrived. The State charged him with attempted first degree rape of the older sister, attempted first degree child molestation of the younger sister, and attempted second degree rape of the boy.

(Dkt. # 15-2 at 2-4.)

## B.    Procedural History

On September 3, 2021, Petitioner was convicted, following a jury trial, on charges of attempted first-degree child molestation and attempted second-degree rape of a child.[4] (Dkt. # 15-1 at 2-3.) Petitioner was sentenced on October 11, 2021, to a minimum term of 76.5 months confinement and a maximum term of life. (*Id.* at 6.) Petitioner thereafter appealed his convictions to the Washington Court of Appeals and on July 24, 2023, the Court of Appeals issued an unpublished opinion affirming Petitioner's convictions. (Dkt. ## 15-3 to 15-5.)

Petitioner next sought review by the Washington Supreme Court. (Dkt. # 15-6.) Petitioner presented two issues to the Supreme Court in his *pro se* petition for review: (1) the peremptory strike of an Asian juror "constituted a prima facie showing of racial motivation and discrimination"' and (2) the state presented insufficient evidence to support Petitioner's convictions. (*Id*. at 6.) The Supreme Court denied the petition for review without comment on

---

[4] The attempted second-degree rape of a child charge pertaining to the boy was dismissed by the trial court before the case went to the jury. (*See* dkt. # 18-10, Vol. 9 at 846:16-847:25.)

REPORT AND RECOMMENDATION - 3

January 3, 2024. (Dkt. # 15-7.) The Washington Court of Appeals issued a mandate terminating direct review on January 22, 2024. (Dkt. # 15-8.)

On May 30, 2024, Petitioner filed a personal restraint petition in the Washington Court of Appeals in which he alleged that there was insufficient evidence to support his convictions, and that his convictions were therefore obtained in violation of the Due Process Clause of the Fourteenth Amendment. (*See* dkt. # 15-9.) The Court of Appeals issued an Order dismissing the petition on August 5, 2024. (Dkt. # 15-10.) Petitioner thereafter sought review by the Washington Supreme Court, and the Supreme Court Commissioner denied Petitioner's motion for discretionary review on September 24, 2024. (Dkt. ## 15-11 to 15-12.) Petitioner moved to modify the Commissioner's ruling, and that motion was denied on December 4, 2024. (*See* dkt. # 15-13.) The Washington Court of Appeals issued a certificate of finality in Petitioner's personal restraint proceedings on December 27, 2024. (*Id.*)

On January 17, 2025, Petitioner filed a second personal restraint petition in the Washington Court of Appeals in which he argued that his trial counsel rendered ineffective assistance when he failed to make a timely objection to the state's use of a peremptory challenge to remove a prospective juror of Asian descent. (Dkt. # 15-14.) On January 22, 2025, Petitioner filed a third personal restraint petition in the Washington Court of Appeals in which he argued that cumulative errors violated his right to a fair trial. (Dkt. # 15-15.) On March 12, 2025, the Court of Appeals consolidated the two petitions and transferred them to the Washington Supreme Court for consideration. (Dkt. # 15-16.) The Supreme Court Commissioner issued an order denying the petitions on April 18, 2025. (Dkt. # 15-17.) Petitioner moved to modify the Commissioner's ruling, and that motion was denied on July 1, 2025. (*See* dkt. # 15-18.) The

REPORT AND RECOMMENDATION - 4

Supreme Court issued a certificate of finality in Petitioner's consolidated personal restraint proceedings on July 8, 2025. (*Id.*) Petitioner now seeks federal habeas review of his convictions.

### III.   GROUNDS FOR RELIEF

Petitioner identifies the following four grounds for relief in his federal habeas petition:

1.   There is not sufficient evidence to support the Convictions in the case and Mr. Best's Convictions are in violation of the Due Process Clause of the Fourteenth Amendment of the Constitution of the United States.

2.   The Peremptory Strike of Venire Asian Juror No. 46 constituted a prima facie showing of racial motivation and discrimination.

3.   Mr. Best's Sixth Amendment Constitutional Rights to the Effective Assistance of Counsel were Violated by Defense Counsel's failure to Timely Object, on Batson/GR 37 grounds, to the State's use of the Peremptory Strike on Venire Asian Juror No. 46.

4.   Where numerous and cumulative errors had resulted in Substantial Prejudice, the Cumulative Error Doctrine requires the Convictions be Vacated.

(*See* dkt. # 4 at 5, 28, 36; *see also* dkt. # 6 at 12, 23, 31, 38.)

### IV.   DISCUSSION

**A.   Federal Habeas Standard, 28 U.S.C. § 2254**

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a habeas corpus petition may be granted with respect to any claim adjudicated on the merits in state court only if (1) the state court's decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court, or (2) the decision was based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d). In considering claims pursuant to § 2254(d), the Court is limited to the record before the state court that adjudicated the claim on the merits, and the petitioner carries the burden of proof. *Cullen v. Pinholster*, 563 U.S. 170, 181-82 (2011).

REPORT AND RECOMMENDATION - 5

Under § 2254(d)(1)'s "contrary to" clause, a federal court may grant the habeas petition only if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *See Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). Under the "unreasonable application" clause, a federal habeas court may grant the writ only if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. *See id*. at 407-09.

The Supreme Court has made clear that a state court's decision may be overturned only if the application is "objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003). The Supreme Court has further explained that "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

Clearly established federal law, for purposes of AEDPA, means "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." *Lockyer*, 538 U.S. at 71-72. This includes the Supreme Court's holdings, not its dicta. *Id.* at 71. "If no Supreme Court precedent creates clearly established federal law relating to the legal issue the habeas petitioner raised in state court, the state court's decision cannot be contrary to or an unreasonable application of clearly established federal law." *Brewer v. Hall*, 378 F.3d 952, 955 (9th Cir. 2004) (citing *Dows v. Wood*, 211 F.3d 480, 485-86 (9th Cir. 2000)).

Under § 2254(d)(2), a petitioner may only obtain relief by showing that the state court's conclusion was based on "an unreasonable determination of the facts in light of the evidence

REPORT AND RECOMMENDATION - 6

presented in the state court proceeding." "To show such an error occurred, the petitioner must establish that the state court's decision rested on a finding of fact that is '*objectively unreasonable.*'" *Hibbler v. Benedetti*, 693 F.3d 1140, 1146 (9th Cir. 2012) (quoting *Lambert v. Blodgett*, 393 F.3d 943, 972 (9th Cir. 2004)) (emphasis in original). "Factual findings are objectively unreasonable if they are unsupported by sufficient evidence in the state court record." *Tong Xiong v. Felker*, 681 F.3d 1067, 1074 (9th Cir. 2012). In addition, the Court presumes the state court's factual findings to be sound unless the petitioner rebuts "the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

**B.      Sufficiency of the Evidence (Ground One)**

Petitioner asserts in his first ground for relief that there was insufficient evidence to support his convictions. (*See* dkt. ## 4 at 5-28, 6 at 12-23.) In particular, Petitioner argues that the evidence presented to the jury did not establish he took a substantial step towards the commission of child molestation in the first degree or rape of a child in the second degree as necessary to support his convictions for "attempt" crimes. (*See id.*)

The Due Process Clause of the Fourteenth Amendment requires that the prosecution prove beyond a reasonable doubt each element of the charged offense. *Carella v. California*, 491 U.S. 263, 265 (1989) (citing *In re Winship*, 397 U.S. 358, 364 (1970)). Due process claims challenging the sufficiency of the evidence are evaluated under the standard announced in *Jackson v. Virginia*, 443 U.S. 307 (1979). The Supreme Court explained in *Jackson* that the relevant question in evaluating a claim of insufficiency of the evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id*. at 319.

REPORT AND RECOMMENDATION - 7

It is the responsibility of the trier of fact, and not a reviewing court, to decide what conclusions should be drawn from the evidence admitted at trial. *Cavazos v. Smith*, 565 U.S. 1, 2 (2011). The Supreme Court has made clear that a reviewing court must be mindful of "the deference owed to the trier of fact and, correspondingly, the sharply limited nature of constitutional sufficiency review." *Wright v. West*, 505 U.S. 277, 296 (1992). In *West*, the Court emphasized the deference owed to the trier of fact:

> We said [in *Jackson*] that "*all of the evidence* is to be considered in the light most favorable to the prosecution" . . . that the prosecution need not affirmatively "rule out every hypothesis except that of guilt" . . . and that a reviewing court "faced with a record of historical facts that supports conflicting inferences must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution."

*Id.* at 296-97 (quoting *Jackson*, 443 U.S. at 326) (citations omitted, emphasis in original).

The Supreme Court has also made clear that sufficiency of the evidence claims are subject to a second layer of judicial deference on federal habeas review. Specifically, the Supreme Court has held that "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Coleman v. Johnson*, 566 U.S. 650, 651 (2012) (citing *Cavazos*, 565 U.S. at 2).

Petitioner first presented his sufficiency of the evidence claim to the state courts in a statement of additional grounds submitted to the Washington Court of Appeals on direct review. (Dkt. # 15-19.) The Court of Appeals rejected the claim, explaining its conclusion as follows:

> Best claims that there is insufficient evidence that the "[a]ppellant intended to have sex with the girls on the day he arrived at the house or took a substantial step towards the commission of [h]is offenses." We disagree. The evidence here includes, but is not limited to, the testimony of Sergeant Anna Standiford recounting what Best said during phone calls when he believed he was speaking with 11-year-old "A," text messages in which Best described his physical arousal and intentions regarding the fictitious children, and Best's arrival at the fictitious

REPORT AND RECOMMENDATION - 8

mother's home at the exact time the two of them had agreed upon for a weekend involving sexual contact with the fictitious children. Viewing the evidence in the light most favorable to the State, and drawing all references [sic] in the State's favor (as required, *see State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992)), there is sufficient evidence to convince a rational juror to find beyond a reasonable doubt that Best took a substantial step toward the commission of attempted second degree rape of a child and attempted first degree child molestation.

(Dkt. # 15-5 at 12-13.)

Petitioner raised his sufficiency of the evidence claim again in the first of his three personal restraint petitions. (*See* dkt. # 15-9.) Petitioner argued therein that further review of the claim was warranted because the merits of the issue were not heard and determined on direct appeal. (*Id.* at 8.) The Court of Appeals rejected this argument and concluded Petitioner had not demonstrated the ends of justice would be served by reexamining the issue previously disposed of on direct appeal. (Dkt. # 15-10 at 4.) The Washington Supreme Court concurred with the Court of Appeals in its ruling denying Petitioner's motion for discretionary review of the Court of Appeals' decision. (*See* dkt. # 15-12.)

In this federal habeas action, Petitioner argues the state court's determination that a rational trier of fact could have found beyond a reasonable doubt that he took a substantial step toward the commission of child molestation in the first degree or rape of a child in the second degree is objectively unreasonable, and he details the evidence presented at trial which he believes demonstrates he did not do an act which constitutes the required substantial step. (*See* dkt. # 4 at 8-27.) Respondent argues the Washington Court of Appeals reasonably determined that the evidence presented to the jury was sufficient to prove the challenged elements of each offense, but she offers no additional analysis of Petitioner's claim nor any response to the extensive arguments he presents in his materials. (*See* dkt. # 14 at 15-16.) While this Court

REPORT AND RECOMMENDATION - 9

concurs that the state courts reasonably rejected Petitioner's sufficiency of the evidence claim, this determination requires more than the bare conclusion offered by Respondent.

Petitioner asserts that the Court of Appeals' decision was based on materially false conclusions that do not align with the evidence in the record. (*See* dkt. # 4 at 19-27.) In particular, Petitioner cites to the state court's description of Sergeant Anna Standiford's testimony as "recounting what Best said during phone calls when he believed he was speaking with 11-year-old 'A.'" (*Id.* at 19.) Petitioner maintains that the evidence in the record shows there was only one call between him and Sergeant Standiford during which he believed he was speaking to a child and not multiple calls as suggested in the Court of Appeals' decision. (*See id.* at 19-20.) He also maintains that there was no evidence establishing he had ever spoken with anyone portraying fictitious character "A," noting that during his single call with Sergeant Standiford she was portraying the fictious character "L." (*Id.*)

Petitioner is correct that the record reveals there was only one call between him and Sergeant Standiford during which she portrayed the fictitious minor child "L" (dkt. # 18-9, VTP, Vol. 8 at 780:23, 797:1-3), and that there was no evidence he ever spoke to anyone portraying the fictitious minor child "A." However, Petitioner fails to demonstrate that these discrepancies render the Court of Appeals' ultimate conclusion objectively unreasonable.

Petitioner also takes issue with the Court of Appeals' determination that the evidence established he had arrived at the fictious mother's home "at the exact time the two of them had agreed upon for a weekend involving sexual contact with the fictitious children." (Dkt. # 4 at 21-22.) Petitioner maintains that the evidence in the record shows there were no specific plans, nor any agreement, that he would have sex with the children when he arrived. (*See id.*) He notes, in particular, that there was no evidence he had obtained condoms prior to his arrival, which Kristl,

REPORT AND RECOMMENDATION - 10

the fictitious mother, had made clear were a prerequisite for sex. (*See id*. at 17-22.) While Petitioner is correct that the evidence did not show there was a specific agreement to have sex with the children at the time he arrived at the house, or that he was in possession of condoms at the time of his arrest, the absence of such evidence does not render the Court of Appeals' conclusion objectively unreasonable.

A review of Petitioner's arguments reveals that he is effectively challenging the conclusions drawn by the jury from the evidence admitted at trial, conclusions that are beyond the purview of this Court on federal habeas review. This Court, having reviewed the trial transcript, concurs with the Court of Appeals that, when the evidence presented at trial is viewed in its totality and in the light most favorable to the prosecution, there was sufficient evidence to support Petitioner's convictions. The Court highlights some of that evidence below.

Beginning with the phone call Petitioner references in his briefing, the record reflects that the call during which Petitioner spoke with Sergeant Standiford, believing her to be a minor, occurred during the course of a call between Petitioner and Kristl who was being portrayed at that time by Washington State Patrol Detective Kristl Pohl. (*See* dkt. # 18-8, VTP, Vol. 6 at 1046:24-1047:16.) This call occurred on February 17, 2016, three days before Petitioner showed up at the family's home, ostensibly to meet Kristl and her minor children. (*See id.*) During the conversation between Petitioner and Kristl, they discussed their respective children and Petitioner's sexual experiences with his own daughters, which included penetration and ejaculating on them. (*Id.* at 1049:15-1052:18.) They also discussed the possibility of Kristl's 13-year-old son having sex with Petitioner's youngest daughter (*id.* at 1053:14-25), and the prospect of Petitioner coming over for a first meeting with the family (*id.* at 1054:14-1055:20).

REPORT AND RECOMMENDATION - 11

At some point during the conversation, Kristl passed the telephone to Sergeant Standiford in her role as fictitious character "L," an 11 or 12-year-old female. (*See* dkt. # 18-8, VTP, Vol. 6 at 1054:12-1056:7.) Sergeant Standiford recounted during her trial testimony the graphic language Petitioner used in describing what he would like to do with minor child "L," which included sexual intercourse, and she testified as well that Petitioner inferred during the call he would also like to be intimate with "L's" younger sister, 8-year-old "A." (Dkt. # 18-9, VTP, Vol. 8 at 782:17-24, 786:3-10.) Detective Pohl testified that after Sergeant Standiford handed the phone back to her, Petitioner commented to her, "She's sweet, I'm jacking off to her." (Dkt. # 18-8, VTP, Vol. 6 at 1086:18-25.)

In addition to the testimony about Petitioner's conversations with Kristl and "L," there was extensive testimony from Detective Sergeant Carlos Rodriguez who portrayed Kristl in e-mails and text messages exchanged with Petitioner beginning in December 2015 and continuing until his arrest in February 2016. Petitioner acknowledged at the outset of these exchanges his interest in sexual contact with minors, including his own children, and throughout the interactions with Kristl he expressed in graphic terms his affinity for sexual contact with very young girls. (*See* dkt. # 18-4, VTP, Vol. 4 at 834:17-890:7; dkt. # 18-5, Vol. 4 at 268:22-339:6.) Petitioner and Kristl also discussed the need to be discreet, the ages of their children, the degree of sexual experience their children had, restrictions on sexual contact involving their children, and the prospect of arranging a meeting. (*See id.*)

Of particular note was a text exchange between Petitioner and Kristl on February 19, 2016, the day before Petitioner's arrest, during which they were exchanging photos and Petitioner sent a video of himself masturbating. (*See* dkt. # 18-5, VTP, Vol. 4 at 324:9-326:4.) Petitioner thereafter specifically asked Kristl if "she," referring to "L," liked the video and Kristl

REPORT AND RECOMMENDATION - 12

told him "L" hadn't seen it. (*See id*. at 326:23-328:16.) Immediately following the discussion about the video, Petitioner asked about meeting the following day. (*See id.*, 328-19-329:10.) Notable as well is the fact that though there was no specific agreement that Petitioner would have sex with the children upon his arrival at the house on what was a Saturday morning, Detective Pohl testified that they had discussed Petitioner coming to the house for the weekend. (*See* dkt. # 18-9, Vol. 8 at 633:11-13, 637:21-24 639:19-640:16.) It could reasonably be inferred from the evidence that Petitioner intended to have sex with the children at some point during that weekend, particularly in light of the testimony regarding the e-mails, text, and phone calls that were exchanged prior to Petitioner's arrival at the home.

In sum, the Washington Court of Appeals reasonably concluded that, viewing the totality of the evidence in the light most favorable to the state, and drawing all inferences in the state's favor, there was sufficient evidence to convince a reasonable juror beyond a reasonable doubt that Petitioner took a substantial step toward the commission of attempted second degree rape of a child and attempted first degree child molestation. Petitioner's first ground for relief should therefore be denied.

### C.    *Batson*/Ineffective Assistance of Counsel (Grounds Two and Three)

Petitioner asserts in his second and third grounds for relief that the state's peremptory strike of an Asian juror, Juror No. 46, was based on racial motivation and discrimination, and that his counsel's failure to timely object to the state's use of the peremptory strike on *Batson*[5]/GR 37[6] grounds violated his Sixth Amendment right to effective assistance of counsel. (Dkt. ## 4 at 28-42, 6 at 23-37.)

---

[5] *Batson v. Kentucky*, 476 U.S. 79 (1986).

[6] Washington General Rule ("GR") 37 was adopted by the Washington Supreme Court in 2018 in an effort to address the shortcomings of *Batson*; namely, that it is difficult for defendants to prove

REPORT AND RECOMMENDATION - 13

###### 1.    State Court Resolution of Claims

Petitioner argued in his statement of additional grounds on direct appeal that the state's peremptory challenge striking the only Asian juror was based on racial motivation and discrimination, and that the trial court erred in ruling that his challenge under GR 37(c) was untimely.[7] (Dkt. # 15-19 at 3-5.) The Washington Court of Appeals rejected that claim, concluding the trial court properly applied the rule in Petitioner's case as the juror in question was excused before Petitioner's counsel raised the GR 37(c) challenge and Petitioner had not shown new information justifying an untimely challenge had been discovered. (Dkt. # 15-5 at 12.)

In his second personal restraint petition, Petitioner again asserted a claim related to the state's peremptory challenge to Juror No. 46 but on this occasion he framed the claim as one alleging ineffective assistance of counsel. (*See* dkt. # 15-14 at 20-21.) Specifically, Petitioner alleged that counsel failed to timely object to the state's use of a peremptory challenge on Juror No. 46 and that he was substantially prejudiced as the result of the violation of his Fourteenth Amendment right to a trial process free from discrimination under *Batson* and GR 37. (*See* dkt. # 15-14 at 20-21.)

---

discrimination under *Batson* because the trial judge must find purposeful discrimination without considering systemic and unconscious racial bias. *See State v. Tesfasilasye*, 200 Wn.2d 345, 356-57 (2022). Under GR 37, if "an objective observer could view race or ethnicity as a factor in the use of [a] peremptory challenge, then the peremptory challenge shall be denied." GR 37(e).

[7] GR 37(c) provides as follows:

> A party may object to the use of a peremptory challenge to raise the issue of improper bias. The court may also raise the objection on its own. The objection shall be made by simple citation to this rule, and any further discussion shall be conducted outside the presence of the panel. The objection must be made before the potential juror is excused, unless new information is discovered.

REPORT AND RECOMMENDATION - 14

The Washington Supreme Court rejected the claim, ruling as follows:

Best argues that his trial counsel was ineffective in failing to make a timely GR 37 objection to the State's peremptory challenge to the only remaining prospective juror of Asian descent. Best raises this issue as an ineffective assistance of counsel claim because the Court of Appeals held on direct appeal that counsel's objection to the challenge the day after the prospective juror was excused was too late. *See* GR 37(c) (objection must be made before juror is excused unless new information is discovered). To prevail on this claim, Best must show that counsel's performance fell below an objective standard of reasonableness and that, but for counsel's deficiency, there is a reasonable probability the outcome of the trial would have been different. *In re Pers. Restraint of Crace*, 174 Wn.2d 835, 846-47, 280 P.3d 1102 (2012). Regardless of whether counsel was professionally deficient in failing to timely object to the peremptory challenge, Best fails to demonstrate the requisite prejudice. When the claimed deficiency rests on counsel's failure to make an objection, prejudice turns on whether the objection likely would have succeeded. *State v. Vasquez*, 198 Wn.2d 239, 248, 494 P.3d 424 (2021). Here, though the superior court deemed defense counsel's GR 37 objection untimely, it nonetheless addressed the merits of the challenge and ultimately determined, in accordance with the rule, that an objective observer could not view race or ethnicity as a factor in the challenge. GR 37(e); 3 Verbatim Report of Proceedings (Aug. 18, 2021). Best thus does not show that a timely objection likely would have succeeded. And even if an objection would have succeeded and the juror had served on the panel, Best does not show there is a reasonable probability the outcome would have been different. Finally, even considering the merits of a potential GR 37 challenge, Best does not show that the State relied on presumptively improper reasons like "unintelligent or confused answers" or stereotypical thought processes. GR 37(i). Rather, the State legitimately worried whether the juror could put aside his evident constitutional and privacy concerns with the manner by which law enforcement investigated Best (undercover sting operation).

(Dkt. # 15-17 at 2-3.)

> 2. *Batson Claim (Ground Two)*

In *Batson*, the Supreme Court made clear that a "State's privilege to strike individual jurors through peremptory challenges . . . is subject to the commands of the Equal Protection Clause," which "forbids the prosecutor to challenge potential jurors solely on account of their race." 476 U.S. at 89; *see also Davis v. Ayala*, 576 U.S. 257, 285 (2015). A *Batson* challenge to a peremptory strike requires a three-step analysis. *See Rice v. Collins*, 546 U.S. 333, 338 (2006).

REPORT AND RECOMMENDATION - 15

First, the defendant must make a prima facie showing that the prosecutor exercised a peremptory challenge on the basis of race. *Id.*

Second, if the defendant makes the requisite showing, the prosecutor must articulate a race-neutral reason for bringing the peremptory challenge. *See Rice*, 546 U.S. at 338. As to this second step, while the prosecutor must offer a "comprehensible reason" for striking the juror in question, the prosecutor's explanation need not be "persuasive, or even plausible." *Id.* (quoting *Purkett v. Elem*, 514 U.S. 765, 767-68 (1995)). "[S]o long as the reason is not inherently discriminatory, it suffices." *Id.*

Third, the trial court must determine whether the defendant has shown purposeful discrimination. *Rice*, 546 U.S. at 338. "This final step involves evaluating 'the persuasiveness of the justification' proffered by the prosecutor, but 'the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike.'" *Id*. (quoting *Purkett*, 514 U.S. at 768).

The trial court's determination as to the issue of discriminatory intent is accorded great deference because the ruling often rests on evaluations of credibility or demeanor as to both the prosecutor who seeks to exercise the challenge and the challenged juror. *Snyder v. Louisiana*, 552 U.S. 472, 477 (2008). Under AEDPA, a federal habeas court considering a state court's *Batson* determination "must accept a state-court finding unless it was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Davis*, 576 U.S. at 271. "Thus, a federal habeas court can only grant [a federal habeas petition] if it was unreasonable to credit the prosecutor's race-neutral explanations for the *Batson* challenge." *Rice*, 546 U.S. at 338. "State-court factual findings, moreover, are presumed correct;

REPORT AND RECOMMENDATION - 16

the petitioner has the burden of rebutting the presumption by 'clear and convincing evidence.'" *Id.* at 338-39 (quoting 28 U.S.C. § 2254(e)(1)).

Here, the trial court conducted its analysis of Petitioner's challenge to the peremptory strike of Juror No. 46 under GR 37(g) and not under the *Batson* three-part inquiry set forth above. (*See* dkt. # 18-3, 3 VTP, Vol. 3 at 503:19-509:1.) The Washington appellate courts similarly addressed Petitioner's challenge to the peremptory strike under GR 37. (*See* dkt. ## 15-5 at 12, 15-17 at 2-3.) To the extent Petitioner seeks to challenge in this action the peremptory strike of Juror No. 46 under GR 37, he has not presented a cognizable claim for habeas relief as it is not the province of federal habeas courts to re-examine state court conclusions regarding matters of state law. *Estelle v. McGuire*, 502 U.S. 62 (1991); *Jeffries v. Blodgett*, 5 F.3d 1180, 1192 (9th Cir. 1993), *cert. denied*, 510 U.S. 1191 (1994).

To the extent Petitioner seeks to challenge the peremptory strike under *Batson*, the Court observes that though the state courts did not directly apply the *Batson* test, their rulings are nonetheless consistent with *Batson*. Petitioner argues vigorously that the facts in the record "prove" the prosecution's use of the peremptory strike on Juror No. 46 was made with a discriminatory purpose, claiming that "the State's concern that Venire Asian Juror No. 46 couldn't be fair and impartial derives from the State's own racial stereotyping against Asian thought processing." (Dkt. # 4 at 35-36.) This claim appears to be based on the following argument made by the prosecutor at trial in relation to Petitioner's challenge to the peremptory strike:

> I would note that I posed to Juror 46 the same hypotheticals I gave everyone else. His answers were non-conclusory, unless and until we ask the ultimate question.
>
> But the process by which he answered most of the questions was not firm. He didn't give yes or nos, he kept asking questions back, which gave the State concern because he had continually talked about he would consider [sic] legality and

REPORT AND RECOMMENDATION - 17

constitutionality and due process concerns in addition to whatever else was before him.

When finally pressed, he said, "Oh, I could be fair and impartial," but indicated that he would need to functionally be told not to pay attention to those things.

The State had concerns he could be fair – he couldn't be fair and impartial, not because he didn't want to be, but because his thought processing kept lending itself into these long, off-tangent topics, instead of answering the State's actual question.

(Dkt. # 18-3, VTP, Vol. 3 at 500:14-501:9.)

The trial court, after ruling that Petitioner's challenge to the peremptory strike was untimely, went on to address the substance of the challenge and concluded the challenge lacked merit. The trial court explained its conclusion as follows:

The Court does not believe that the answers that are given in which Ms. Saracino had trouble identifying -- frankly, the Court did too -- whether or not Juror 46 would truly be able to constrain his deliberations and his consideration of the facts only to the law before him and would not be seeking additional information or confirmation that actions or laws were constitutional or within the bounds of the law.

I do not think that that constitutes behavior or conduct as contemplated by either *Batson* or GR 37. This was not related to body language or demeanor. The answers were not unintelligent or confused. The answers simply left remaining questions based on the continued repeating of concerns about constitutional issues, and then statements that, despite that, Juror 46 would be able to follow the law.

The Court does agree that there was waffling there, but does not think it constitutes unintelligent or confused answers as constituted by (i), finding therefore, that this allegation was not related or based on any inappropriate conduct.

(Dkt. # 18-3, VTP, Vol. 3 at 507:9-508:4.) The trial court also expressly found that there was nothing in the questions or the answers provided that implicated race in relation to the answers or the use of the peremptory challenge. (*See id*. at 508:21-24.)

Petitioner's contention that the prosecutor's questions implicated "Asian thought processing," is vague and not supported by the record. The trial court clearly deemed the prosecutor's explanations for exercising the peremptory challenge to be race neutral and that

REPORT AND RECOMMENDATION - 18

determination is entitled to deference. Petitioner fails to demonstrate that the Washington Supreme Court, in assessing the substance of his peremptory strike claim, was unreasonable in crediting the prosecutor's race-neutral explanation. Petitioner's *Batson* challenge therefore fails and his second ground for relief should be denied.

### 3. Ineffective Assistance of Counsel (Ground Three)

The Sixth Amendment guarantees a criminal defendant the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668 (1984). "The essence of an ineffective-assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect." *Kimmelman v. Morrison*, 477 U.S. 365, 374 (1986). Claims of ineffective assistance of counsel are evaluated under the two-prong test set forth in *Strickland*. Under *Strickland*, a defendant must prove (1) that counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687.

With respect to the first prong of the *Strickland* test, a petitioner must show that counsel's performance fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 688. This requires "showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. at 687. Judicial scrutiny of counsel's performance must be highly deferential. *Id*. at 689. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id*. There is a strong presumption that counsel's performance fell within the wide range of reasonably effective assistance. *Id*. In order to prevail on an

REPORT AND RECOMMENDATION - 19

ineffective assistance of counsel claim, a petitioner must overcome the presumption that counsel's challenged actions might be considered sound strategy. *Id*.

The second prong of the *Strickland* test requires a showing of actual prejudice related to counsel's performance. In order to establish prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. The reviewing court need not address both components of the inquiry if an insufficient showing is made on one component. *Id*. at 697.

While the Supreme Court established in *Strickland* the legal principles that govern claims of ineffective assistance of counsel, it is not the role of the federal habeas court to evaluate whether defense counsel's performance fell below the *Strickland* standard. *Harrington*, 562 U.S. at 101. Rather, when considering an ineffective assistance of counsel claim on federal habeas review, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable." *Id*. As the Supreme Court explained in *Harrington*, "[a] state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Id*.

The Washington Supreme Court, in evaluating Petitioner's ineffective assistance of counsel claim, applied a standard consistent with that set forth in *Strickland* and reasonably concluded that Petitioner had not demonstrated the requisite prejudice because he failed to show that a timely objection would likely have succeeded. (Dkt. # 15-17 at 2-3.) The trial court's ruling makes clear that a timely objection would not have succeeded as neither the prosecutor's questioning of the challenged juror, the juror's answers, nor the use of the peremptory challenge,

REPORT AND RECOMMENDATION - 20

were deemed to implicate race. Petitioner's ineffective assistance of counsel claim therefore fails and his third ground for relief should be denied.

### C.    Cumulative Error (Ground Four)

Petitioner asserts in his fourth ground for relief that the Cumulative Error Doctrine requires that his convictions be vacated. (*See* dkt. ## 4 at 42-55, 6 at 38-43.) Petitioner does not base his claim on the cumulative effect of the constitutional violations alleged elsewhere in his petition. He instead identifies a number of other errors that he claims, cumulatively, denied him his Fourteenth Amendment right to a fair trial. (*See id*.) The errors alleged in this claim are that: (1) the trial court biased the juror pool by having read the charges aloud twice; (2) after the charges in the second amended information were read to the jury twice, the third amended information was filed without informing the jury of the amended charges; and (3) the jury instructions did not match the charges set forth in the third amended information, rendering the information deficient. (*See id.*) Petitioner also appears to complain that the state presented numerous videos and photos of his arrest to the jury, and he suggests such evidence was irrelevant as there was no element of the charged offenses requiring proof of his arrest. (Dkt. # 6 at 39.)

The Ninth Circuit Court of Appeals has recognized the "cumulative error" doctrine which provides that even where no single error rises to the level of a constitutional violation, "the combined effect of multiple trial court errors violates due process where it renders the resulting criminal trial fundamentally unfair." *Parle v. Runnels*, 505 F.3d 922, 927 (9th Cir. 2007) (citing *Chambers v. Mississippi*, 410 U.S. 284 (1973)). The Ninth Circuit explained in *Parle* that "the fundamental question in determining whether the combined effect of trial errors violated a defendant's due process rights is whether the errors rendered the criminal defense 'far less

REPORT AND RECOMMENDATION - 21

persuasive,' . . . and thereby had a 'substantial and injurious effect or influence' on the jury's verdict." *Id*. at 928 (citations omitted).

Petitioner presented his cumulative error claim to the state courts in his third personal restraint petition. (*See* dkt. # 15-15.) The Washington Supreme Court did not specifically address Petitioner's cumulative error claim but instead briefly addressed the individual errors identified in the claim, rejecting each of Petitioner's arguments:

> Best argues, first, that the superior court tainted the jury pool by reading the charges twice. Best cites no authority whatsoever that suggests it is improper to read the charges to prospective jurors, however many times. Best next complains that the superior court did not read the midtrial third amended information. Again, he cites no authority suggesting this was error at all, but even if it was, he does not show, as he must, that he was actually and substantially prejudiced by constitutional error or that this claimed error constituted a fundamental defect inherently resulting in a complete miscarriage of justice. *See In re Pers. Restraint of Yates*, 177 Wn.2d 1, 17, 296 P.3d 872 (2013).
>
> Best next argues that the jury instructions on the second count (attempted second degree child rape) did not match the date specified in the third amended information. The information alleged that the attempt took place on February 29, 2016. Clerk's Papers (CP) at 196. The "to convict" instruction, however, specified February 20. CP at 175. But it is clear that the date in the amended information was a scrivener's error. The evidence as to all three charges was that the attempts all occurred on February 20, and the other two charges specified that date. CP at 196-97. Best was well aware of this, having proposed his own instruction on count 2 that specified February 20 as the relevant date. CP 1026. Thus, if there was a discrepancy, Best again does not show that he suffered actual and substantial prejudice or a complete miscarriage of justice.
>
> Finally, Best disputes the admission of photographs and videos of his arrest. He offers no argument, however, explaining why it was error to admit these materials, other than to generally claim that they were irrelevant. But most importantly for purposes of collateral relief, he again fails to demonstrate the requisite prejudice.

(Dkt. # 15-17 at 3-4.)

Petitioner argues that the Washington Supreme Court's decision is contrary to clearly established federal law because the decision did not invoke or apply the cumulative error doctrine, but instead provided "a balkanized issue-by-issue harmless error analysis which is

REPORT AND RECOMMENDATION - 22

directly contrary to the precedent established." (Dkt. # 4 at 54-55.) In this instance, however, the state court determined that, aside from an apparent scrivener's error in the third amended information, Petitioner had established no error in relation to the individual claims that comprise his cumulative error claim, and Petitioner fails to demonstrate that the Supreme Court's conclusions with respect to the alleged individual errors were objectively unreasonable. As there were no errors to accumulate, the cumulative error doctrine does not apply and Petitioner's fourth ground for relief should therefore be denied.

### D.   Certificate of Appealability

A petitioner seeking post-conviction relief under § 2254 may appeal a district court's dismissal of his federal habeas petition only after obtaining a certificate of appealability from a district or circuit judge. A certificate of appealability may issue only where a petitioner has made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A petitioner satisfies this standard "by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Under this standard, this Court concludes that Petitioner is not entitled to a certificate of appealability with respect to any of the claims asserted in his petition.

### V.   CONCLUSION

Based on the foregoing, this Court recommends that Petitioner's petition for writ of habeas corpus (dkt. # 6) be denied, and this action be dismissed with prejudice. This Court further recommends that a certificate of appealability be denied with respect to all claims asserted in this federal habeas action. A proposed Order accompanies this Report and Recommendation.

REPORT AND RECOMMENDATION - 23

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit not later than **fourteen (14) days** from the date on which this Report and Recommendation is signed. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motions calendar **fourteen (14) days** from the date they are filed. Responses to objections may be filed by **the day before the noting date**. If no timely objections are filed, the matter will be ready for consideration by the District Judge on **May 12, 2026**.

DATED this 21st day of April, 2026.

MICHELLE L. PETERSON
United States Magistrate Judge

REPORT AND RECOMMENDATION - 24